STATE of Delaware

v.

Georgios FOTAKOS, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: May 3, 1991.
Decided: May 16, 1991.

Lawrence W. Lewis, Deputy Atty. Gen., and Loretta G. LeBar, Dept. of Justice, Wilmington, for the State.

Bernard J. O'Donnell, Asst. Public Defender, Office of Public Defender, Wilmington, for defendant.

## OPINION

GEBELEIN, Judge.

An evidentiary hearing was held in this Court on Friday, May 3, 1991. The purpose of this hearing was to determine whether the defendant, Georgios Fotakos, should be incarcerated in the Delaware State Hospital Comegys Building or be transferred to the Delaware Department of Correction pursuant to 11 *Del.C.* § 408(c).

## BACKGROUND

On December 9, 1987, a jury found the defendant guilty, but mentally ill of Arson in the First Degree pursuant to 11 *Del.C.* § 408.

On April 15, 1988, Mr. Fotakos was sentenced to 30 years at Level 5 subject to 11 *Del.C.* § 4204(k).

The defendant was placed in the custody of the Department of Correction at the Delaware State Hospital for the purpose of carrying out the sentence.

On November 16, 1990, the Attorney General's Office requested this Court to hold an evidentiary hearing to determine whether Mr. Fotakos can be transferred from the Delaware State Hospital to the Department of Correction under 11 *Del.C.* § 408(c).

Eleven *Del.C.* § 408(c) states in pertinent part:

When the State Hospital or other treating facility designated by the Commissioner discharges an offender prior to the expiration of such person's sentence, the treating facility shall transmit to the Commissioner and to the Parole Board a report on the condition of the offender which contains the clinical facts; the diagnosis; the course of treatment, and prognosis for the remission of symptoms; the potential for the recidivism, and for danger to himself or the public; and recommendations for future treatment. Where an offender under this section is sentenced to the State Hospital or other facility, he shall not be eligible for any privileges not permitted in writing by the Commissioner (including escorted or unescorted on-grounds or off-grounds privileges) until the offender has become eligible for parole. *Where the court finds that the offender, before completing his sentence, no longer needs nor could benefit from treatment for his mental illness, the offender shall be remanded to the Department of Correction.* The offender shall have credited to his sentence the time served at the State Hospital or other facility. (Emphasis added.)

■ The Attorney General correctly argues that the standard to be applied when considering whether to transfer a defendant from the State Hospital to the Department of Correction is set forth at 11 *Del.C.* § 408(b). The applicable language of that statute reads:

... The Delaware State Hospital, or any other residential treatment facility to which the defendant is committed by the Commissioner, shall have the authority to discharge the defendant from the facility to which the defendant is committed and return the defendant to the physical custody of the Commissioner *whenever the facility believes that such a discharge is in the best interests of the defendant.* (Emphasis added.) 11 *Del.C.* § 408(b).[1]

■ In considering the best interests of the defendant, the Court relies on the opinion of experts, the Director of the Division of Alcoholism, Drug Abuse and Mental Health and those persons at the Delaware State hospital who are directly responsible for such treatment.

In accordance with the standard, this Court heard testimony of Drs. Dogan and Webber who were or are presently responsible for the mental health care of Mr. Fotakos at the Delaware State Hospital as well as that of Dr. Raskin who is a mental health consultant for the Department of Correction.

Dr. Kutas Tavlan–Dogan, M.D., a senior psychiatrist at the Delaware State Hospital, testified that she is not presently as active in the care of Mr. Fotakos as she once was when he was first incarcerated at the Delaware State Hospital. This she attributes to a civil action filed against her by Mr. Fotakos.

The doctor testified that while active in the defendant's care, he was diagnosed as suffering from paranoid delusional disorder. She explained that this disorder con-

---

1. There was no evidence offered to indicate that the Delaware State Hospital has filed the report contemplated by 11 *Del.C.* § 408(c).

sists of a false delusional belief on the part of the defendant who otherwise is a reality-based individual who is capable of functioning appropriately from a mental standpoint.

The delusional belief which is the focus of Mr. Fotakos' disorder centers around an incident which occurred in the 1970's. The defendant became obsessed with the idea that his ex-wife underwent an abortion, performed by his family doctor who the defendant believes covered up the incident and falsified a consent form in the defendant's name. Doctor Dogan testified that the defendant became frustrated when he could not obtain the alleged consent form through legal channels and ultimately set fire to the home/office of the family doctor. This is the incident giving rise to his conviction.

The defendant continues to maintain a persistent belief that the family doctor performed an abortion on his ex-wife without his consent and that he forged Mr. Fotakos' signature on the consent form. Defendant continues at the hearing to request production of the consent form.

Dr. Dogan explained that the treatment of the defendant's delusional condition is slow going and that in her opinion, time is the best healer. In her opinion, the defendant's present condition is very guarded with the best hope being the use of Haldol, an anti-psychotic medication, to lessen the delusional fixation. She further testified that the defendant is uncooperative with the psychiatric staff and is argumentative with those in positions of authority. This, she explained, hinders his treatment and recovery.

In Dr. Dogan's opinion, the defendant can function in prison, has no trouble with other inmates and any psychiatric treatment can be provided by the mental health team at the prison. She further testified that medication can be administered to the defendant while incarcerated at the prison and counseling can be provided to him there.

In reference to whether the defendant presents a danger to himself or others in a physical sense, Dr. Dogan responded in the negative.

Dr. David Raskin evaluated Mr. Fotakos at the Delaware State Hospital. He is of the opinion that the defendant can be transferred to the Department of Correction at this time. Dr. Raskin testified that the defendant does not believe that there is anything wrong with him and wants to go to prison where the people are healthier. Also, the defendant strongly desires that his medication be stopped.

Dr. Raskin is of the opinion that the defendant could be incarcerated at the prison without the use of anti-psychotic medication because it is less important to treat with medication at a securely controlled facility.

Dr. Raskin testified further that a three to six month course of Haldol administered to a patient should be used to determine if the medication was being effective in improving the patient's condition. He indicated further that it was unlikely that Haldol would be administered to a patient with the defendant's diagnosis in a correctional setting.

Dr. Charles Webber testified that he is presently involved in managing the defendant's mental health care. Dr. Weber stated that he has been treating the defendant for what he diagnosed as delusional disorder, paranoia and jealousy disorder. In addition to this disorder, Dr. Webber stated that the defendant suffers persecutorial delusions. He feels that the defendant is presently not dangerous to himself and others; however, he does believe that the defendant may well become a threat when he has exhausted the route of litigation should it be without satisfaction. In support of this opinion, the doctor explained that the defendant has made the statement on at least one occasion that "he is the law."

Dr. Webber testified that Haldol has a calming effect on the defendant and stated with a reasonable degree of medical certainty that the defendant can return to prison with medication, voluntary or involuntary. Dr. Webber suggested that defendant's Haldol can be administered by injection every three to four weeks rather than

daily by mouth since he does not wish to take it.

Mr. Hugh N. Keel, Director of the Delaware State Hospital testified that the Comegys Building at the Hospital is not equipped to handle long-term patients who are not acutely ill. The facility is such that it treats the acutely ill patient until that patient is stabilized, then the patient is transferred to prison to complete the term of incarceration or is discharged. He is of the opinion that the defendant should be transferred out of the hospital as he is not presently acutely ill and the Comegys Building is an acute care psychiatric facility.

Finally, Mr. Georgios Fotakos testified that he does not want to be incarcerated at the State Hospital nor does he want to be incarcerated in prison. He wants two things: (1) the (non-existent) consent form; and (2) to return to Greece. Mr. Fotakos does not believe that he is mentally ill and in his opinion, the doctors at the State Hospital are medicating him to prevent him from talking about the consent form. He further stated that he does not want to remain on Haldol and believes that the medication is killing him.

In determining whether to incarcerate an individual at the Delaware State Hospital or transfer that person to the State Department of Correction, the Court must take into consideration the best interest of the defendant coupled with the opinions of the Director of the Division of Alcoholism, Drug Abuse and Mental Health and those persons directly responsible for the defendant's treatment at the Delaware State Hospital as set forth at 11 *Del.C.* § 408(b).

The Court must also prevent a cyclic pattern of incarceration involving time served at the State Hospital followed by transfer to prison and then a return to the State Hospital. Such a pattern would definitely not be in the long-term best interest of the defendant.

A review of the testimony indicates that Drs. Dogan and Webber are in favor of transferring the defendant to the Department of Correction with medication. While Dr. Dogan is of the opinion that the course of medication and treatment should be voluntary, Dr. Webber on the other hand, is of the opinion that non-voluntary medication is acceptable. Dr. Raskin would leave the decision to treat with medication up to the defendant. He believes that the prison's ability to control the defendant while incarcerated obviates the need for continuous medication.

Based on the testimony evidence presented at the evidentiary hearing and the applicable statute, 11 *Del.C.* § 408, this Court finds it to be in the best interest of the defendant, Georgios Fotakos, that he be REMANDED to the Department of Correction to continue serving his sentence as the Court finds that the defendant no longer needs continued in-patient treatment for his mental illness, but would benefit equally well from treatment available in the Department of Correction's custody.

IT IS SO ORDERED.